IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RALPH T. LAWRENCE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-4082-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.     Procedural Background**

On May 16, 2005, plaintiff executed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, et seq., and supplemental security income under Title XVIII of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 48-50). In his application, plaintiff alleged a disability onset date of November 2, 2001 (Tr. 48); and claimed to be disabled due to pain in his lower back, and weakness in his right leg. (Tr. 70).

Plaintiff's claim was initially denied due to his failure to cooperate in obtaining the necessary information. (Tr. 39).[1] Plaintiff requested a hearing, which was held on September 4, 2003. The ALJ found that plaintiff suffered from severe impairments including chronic back pain, and chronic obstructive pulmonary disease ("COPD"); but determined that the impairments did not meet or equal

---

[1] In the letter denying benefits, the Commissioner of Social Security noted that attempts to reach plaintiff were unsuccessful, and although a letter was sent to plaintiff requesting that he call the agency, as well as forms to be completed, plaintiff failed to contact the agency or return the forms. (Tr. 39).

a listing. (Tr. 13). The ALJ further determined that although plaintiff could not perform his past relevant work as a logger, stacker, mechanic, or landscaper; he retained the residual functional capacity ("RFC") to perform all sedentary work such as jobs in the machine trades and bench work occupational categories. (Tr. 18-19).

For the reasons set forth herein, the ALJ's decision will be reversed.

## II.     Factual Background

At the outset of the hearing, plaintiff's attorney advised the ALJ that plaintiff could not even perform sedentary work. (Tr. 118). Counsel further advised the ALJ that although not included in the hearing memorandum, evidence of plaintiff's breathing impairments would be contained in the hearing record. (Id).

Plaintiff's Testimony

Plaintiff testified that he was 48 years old, and had been previously married. (Tr. 119). Plaintiff was imprisoned from 1969 to 1972, for theft. (Tr. 120). Plaintiff receives $130.00 a month in food stamps, and he lives in a camping trailer located on land owned by an uncle and aunt. (Tr. 121). The camper is equipped with electricity, but no running water; plaintiff uses the toilet in his family's house. (Tr. 121-22).[2] Plaintiff last worked in 2001, in a sawmill. (Tr. 124). He underwent back surgery on November 2, 2001; 2 disks were removed. (Tr. 124, 128). Plaintiff attempted to

---

[2]According to plaintiff, his mother intended that, upon her death, the van was to go to his sister, and the trailer to him; but his sister kept the trailer and rented it out. (Tr. 122-23). Plaintiff became homeless, and his aunt and uncle permitted him to rent their camper. (Tr. 123).

work after the surgery, but was unsuccessful. (Id). He is willing to attempt to perform a sedentary job. (Tr. 125).

Plaintiff generally spends his time sitting at home, outside during warm weather, watching television and keeping watch of his uncle's junkyard. (Tr. 125-26). He watches the junkyard to prevent theft, in exchange for living in the camper; his relatives occasionally give him money also. (Tr. 125). Plaintiff does not own a vehicle, does not drive, and does not have a drivers license because he is unable to read. (Tr. 126, 131). His aunt takes him to the grocery store. (Tr. 127).

After surgery, plaintiff's doctors advised him not to lift anything over 25 pounds; sometimes he experiences numbness in his legs if he sits and crosses his legs for a certain period of time. (Tr. 127). Plaintiff used to smoke, but quit about 4 four months before the hearing. (Tr. 127-28). Plaintiff testified that he has breathing problems consisting of asthma and bronchitis, which makes it difficult for him to walk to the mailbox. (Tr. 128). Plaintiff also has problems breathing when he goes to bed, and early in the morning. (Id). Plaintiff uses an oxygen tank and an inhaler; he uses the oxygen for 5 to 10 minutes at a time, and uses the inhalers twice a day. (Id).

Plaintiff experiences pain in his back when he bends. (Tr. 128). He avoids telling his doctor about the pain because the doctor looked at him as though he were stupid. (Tr. 128-29). Plaintiff takes Advil and Tylenol for pain in his back and for migraine headaches. (Tr. 130). Plaintiff began experiencing migraine headaches several days prior to the hearing, and had an appointment for medical treatment. (Tr. 131). Plaintiff lies down twice a day for 30 minutes to an hour. (Id).

Plaintiff attended Hickman High School through the tenth grade, and was enrolled in special education classes. (Tr. 132). Plaintiff's counsel advised the ALJ that the school records had been

requested, and the ALJ agreed to hold the record open for 30 days in order to review the records upon receipt. (Id).

**III.    Standard of Review**

Review of a final decision of the Commissioner of Social Security is limited to determining if the decision is supported by substantial evidence on the record as a whole. Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support [the Commissioner's] decision." Bergmann, at 1068; quoting, Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether existing evidence is substantial, evidence that supports and evidence that detracts from the Commissioner's decision must be considered. Bergmann, at 1068.

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. Bergmann, at 1068. A determination must be made whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Id; quoting, Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). In practice, it requires a finding as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. Bergmann, at 1068. However, the ALJ's decision may not be reversed merely because substantial evidence may allow for a contrary decision. Id.

**IV.    Analysis**

As noted above, the ALJ found that plaintiff suffered from severe impairments: chronic back pain and COPD. (Tr. 13). However, the ALJ determined that plaintiff's back impairment did not meet Listing 1.04 due to the absence of evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis. (Id). The ALJ further determined that plaintiff's breathing problems failed to meet the Listing under 3.02 because there were no available pulmonary function tests. (Id). All in all, the ALJ determined that the medical evidence, as well as plaintiff's lack of credibility, belied his allegations of pain.

Plaintiff's Credibility

In undertaking a credibility analysis, the ALJ is required to consider prior work records; observations by third parties and physicians regarding disability; daily activities; the duration, frequency, and intensity of the condition; precipitating and aggravating factors; dosage, effectiveness, and side effects of medications; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

In considering plaintiff's credibility regarding his allegations of pain in his back, the ALJ reviewed the medical records, including evidence of plaintiff's back surgery, and found that the lack of treatment detracted from plaintiff's allegations of pain. (Tr. 15). The ALJ also found that the lack of prescribed medication for pain, as well as plaintiff's failure to comply with suggested prescribed remedial treatment, i.e. walking and swimming, also detracted from plaintiff's credibility. (Id). The ALJ also noted that plaintiff failed to return forms detailing information about his alleged disabling condition. (Id).

5

As to plaintiff's complaints of COPD, the ALJ found that following emergency room treatment in September of 2002, plaintiff's shortness of breath improved with oxygen. (Tr. 16-17). Although in June of 2003, plaintiff suffered from pneumonia, he was successfully treated with medication. (Tr. 17). The ALJ noted that plaintiff requires oxygen twice a day for 5 to 10 minutes, and has breathing problems when he walks to the mailbox; yet, concluded that his breathing impairment was controlled with treatment, including smoking cessation[3]. (Id).

In reaching his decision, the ALJ also found that no treating physician recommended that plaintiff rest during the day, and plaintiff's work record did not note any deterioration of his performance due to the alleged impairments; also, plaintiff's poor earnings record undermined his credibility and supported a motivation to qualify for disability benefits. (Tr. 17-18). The ALJ concluded that plaintiff's ability to sit and watch television was consistent with an ability to maintain a seated position and concentration. (Id).

In appealing the ALJ's decision, counsel for plaintiff argues that the ALJ failed to consider all of the evidence. Counsel does not dispute the ALJ's findings regarding plaintiff's complaints of back pain and COPD, but, argues that plaintiff's Intelligence Quotient ("IQ), in addition to the aforementioned impairments, renders plaintiff disabled under Listing 12.05(c). Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004); see also, Bowman v. Barnhart, 310 F.3d 1080, 1083-85 (8th Cir. 2002).

---

[3] Because plaintiff continued to smoke until 3 to 4 months before the hearing, the ALJ did not add environmental limitations of exposure to smoke, dust, gases, or fumes. (Tr. 18).

All told, the medical evidence before the ALJ, as it pertained to plaintiff's back pain and COPD, was rather cursory. It essentially consisted of Dr. Melamed's treatment on two occasions, and plaintiff's hospital stays at St. Mary's Health Center on September 18, 2002 (Tr. 94-104), and June 2, 2003 (Tr. 79-91), each time with a diagnosis of pneumonia. There are no evaluations of plaintiff's mental or physical abilities either by state consultative physicians or plaintiff's treating physician, purported to be Dr. Miller.

Although the ALJ's credibility finding is not based entirely on the lack of medical evidence, errors were made in assessing other factors. For example, the fact that no physician recommended that plaintiff lie down during the day is not inconsistent with plaintiff's need to lie down; for the need to lie down is a symptom and not a treatment. Holmstrom v. Massanari, 270 F.3d 715, 722 (8th Cir. 1997). The ALJ correctly noted that an unimpressive past work record does not lend itself to plaintiff's credibility. However, the ALJ erred in equating plaintiff's ability to sit and watch television with a presumed ability to perform sedentary work. "[I]n selecting employees employers are concerned with substantial capacity, psychological ability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs by hiring a person with serious physical or mental problems." Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001); quoting, Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984). Thus, the important issue is whether plaintiff has "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984 (8th Cir. 2004); quoting, McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982). Thus, upon remand, the ALJ should more fully develop the record with state examinations

7

for further consideration, with an emphasis on plaintiff's breathing problems, which could easily be decisive as to his ability to work..

Notwithstanding the ALJ's duty, however, the record, or lack thereof, indicates a dereliction of duty on counsel's part as well. Counsel contends that plaintiff's claim should be evaluated under the Listing 12.05(c) based on his school records. This issue was raised briefly during the hearing, and the ALJ agreed to keep the record open for an additional 30 days to receive this evidence. Although counsel states that she submitted the records on September 15, 2003, they are not included in the ALJ's decision; which raises a question on the timeliness of submission. Apparently, the Appeals Council was privy to the records, stating that it "considered" the additional evidence. (Tr. 3); Bergmann v. Apfel, 207 F.3d 1065, 1067 (8th Cir. 2000). However, in failing to expound upon it, the Appeals Council concluded that neither plaintiff's stated reasons nor the additional evidence provided a basis for changing the ALJ's decision. (Tr. 3). Thus, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. (Tr. 3-4).

The most basic service a representative can perform is to provide medical records to the ALJ in a timely manner, for claimants often desperately need the benefits for which they apply. Martin v. Apfel, 983 F.Supp. 812, 815 (S.D.Iowa 1997). It does no one any good - not the claimant, not the ALJ, and not the Court - for the attorney to fail to procure and submit records that will support the client's case. Id. If an attorney has difficulty obtaining medical records from a particular provider, the ALJ and the staff at the Office of Hearings and Appeals can often provide the necessary incentive to the provider (and if necessary compel the production of documents) so that the record is complete at the time of a decision. Id.

8

Plaintiff's brief, purportedly in support of plaintiff's claims, raise even greater concern. Counsel filed a brief totaling six pages in which counsel merely regurgitated the procedural and factual background, and devoted approximately one page in argument contending that plaintiff met the Listing 12.05(c). This raises substantial questions as to whether counsel properly discharged the duties she became obligated to perform for plaintiff and to the court when she filed a complaint on behalf of plaintiff in this court. Sumler v. Bowen, 656 F.Supp. 1322, 1343 (W.D.Ark. 1987) (denial of award of attorney's fees where the filings made by plaintiff's attorney were of no substantial benefit to the claimant and were of no assistance whatsoever in the court's determination that the Secretary should be reversed outright).

New Evidence

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000); see also, Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999). Thus, in situations such as those at bar, a determination must be made as to whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Bergmann v. Apfel, 207 F.3d at 1068; quoting, Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). This requires a decision as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. Bergmann, at 1068.

Here, the new evidence consisted of school records indicating, *inter alia*, plaintiff's IQ ratings of 62 through 69, for the years of 1962 through 1970. (Tr. 111). According to plaintiff, these

9

scores, in addition to his back and breathing impairments, equate to a finding of mental retardation. Section 12.05(c) provides that mental retardation is sufficiently severe to constitute a listed disability for an adult when the claimant has: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." Jones v. Barnhart, 335 F.3d 697, 699 (8th Cir. 2003); citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05( C ) (2002)[4].

However, the threshold requirement for § 12.05 is mental retardation that has manifested itself before age 22. Goose v. Apfel, 238 F.3d 981, 984 (8th Cir. 2001). Plaintiff was born in 1955, thus, during the years of 1962 through 1970, he was under the age of 22. Nevertheless, no evidence has been presented that he manifested retardation at an early age. Consequently, plaintiff fails to meet Listing 12.05(c). This ruling does not, of course, preclude use of current mental conditions, psychological or otherwise, as grounds for a disability ruling..

Substance Abuse

The supplemental record also contains observations of treating physicians regarding possible substance abuse. Although these records were not before the ALJ, and, therefore, not considered in making his decision, the issue suggests that consideration at this juncture may be useful. On November 11, 2003, Dr. Debra Howenstine noted that plaintiff had a "Long history of heavy alcohol use," and that plaintiff began drinking at age 10, and that he had been drinking fairly heavily since

---

[4]As noted by the court in Bergmann, the question of whether plaintiff met this listing must be considered in light of the fact that the evidence was submitted subsequent to the ALJ's decision. Bergmann v. Apfel, 207 F.3d at 1069. 20 C.F.R. § 404.970(b) provides that if new, and material evidence is submitted with a request for review, the Appeals Council must consider it if it is also relevant to the period on or before the date of the ALJ's decision. Bergmann, at 1069.

10

that time. (Supp. Record: 27). Accordingly, Dr. Howenstine checked plaintiff's lab work for signs of hepatitis. (Id). On December 11, 2003, Dr. Howenstine noted that plaintiff denied any alcohol use in the last 3 to 4 months. (Id: 26). On January 27, 2004, Dr. Howenstine again noted plaintiff's long history of excessive alcohol use, and recent abstention. (Id: 24). Dr. Howenstine also opined that plaintiff should qualify for disability on the basis of his reduced pulmonary function, and stated her intention to write a letter to the Department of Social Services if necessary. (Id).

42 U.S.C. § 423(d)(2)( C ) states that if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003). Although the burden rests on plaintiff to prove that alcoholism was not a contributing factor material to the disability determination, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Brueggemann, at 693. If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. Id.

As previously noted, this information was not before the ALJ. Thus, upon remand, the ALJ should consider plaintiff's history of alcohol use, and its effect, if any, on plaintiff's claimed disability.

Accordingly, it is hereby

11

ORDERED that plaintiff's request for judgment is GRANTED, and the decision of the Commissioner of Social Security is REVERSED. The above captioned case is REMANDED to the Commissioner for further consideration and any appropriate further proceedings in light of this opinion, as well as new evidence pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court is directed to enter judgment in favor of plaintiff.

                                                    HOWARD F. SACHS
                                                    UNITED STATES DISTRICT JUDGE

May    ,2005

Kansas City, Missouri

12

Case 2:04-cv-04082-HFS   Document 17   Filed 07/25/05   Page 12 of 12